the British parliament declared, in the most public manner, that he had received many letters from the Northern states of America, urging parliament to acknowledge the independence of the Southern Confederacy. Such an announcement ought to arrest the attention of grand juries; for, if any such communication had, been made by a citizen of the United States, it is a high misdemeanor. St. 1799, c. 1 (1 Stat. 613), was especially designed to prevent such unwarrantable interference with the diplomacy and purposes of our government. It declares: "That if any person, being a citizen of the United States, whether he be actually resident, or abiding within the United States, or in any foreign country, shall, without the permission or authority of the government of the United States, directly or indirectly, commence, or carry on, any verbal or written correspondence or intercourse with any foreign government, or any officer or agent thereof, with an intent to influence the measures or conduct of any foreign government, or of any officer or agent thereof, in relation to any disputes or controversies with the United States, or defeat the measures of the government of the United States," he shall be liable to punishment by fine not exceeding five thousand dollars, and imprisonment not less than six months nor exceeding three years. And the same penalties are incurred by any person who, being a "citizen of, or resident within the United States. and not duly authorized, shall counsel, advise, aid or assist in any such correspondence, with intent as aforesaid."

The last session of congress made two important additions to our Criminal Code. The statute of the 31st July last (Acts 1861, c. 33; 12 Stat. 284), declares: "That if two or more persons within any state or territory of the United States shall conspire together to overthrow, or to put down, or to destroy by force, the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States; or by force to prevent, hinder, or delay the execution of any law of the United States; or by force, to seize, take, or possess any property of the United States against the will or contrary to the authority of the United States; or by force, or intimidation, or threat to prevent any person from accepting or holding any office, or trust, or place of confidence, under the United States; each and every person so offending shall be guilty of a high crime, and upon conviction thereof * * * shall be punished by a fine not less than five hundred dollars and not more than five thousand dollars, or by imprisonment, with, or without hard labor, as the court shall determine, for a period not less than six months nor greater than six years, or by both such fine and imprisonment." Levying war against the United States, and resisting or obstructing the execution of the laws of the United States, have, from the origin of the government, been criminal offences; but heretofore the criminal law has waited until treason or resistance has been consummated by an overt act. Conventions, associations, combinations, or conspiracies, however atrocious even for the purpose of levying war and subverting the government, were not subject to criminal prosecutions; but now we have a statute of prevention which reaches one of the initiatory steps. Not only combinations to overthrow the government, but conspiracies of mutual agreements, whether by few or many, public or private, forcibly to resist or even to delay the execution of any law, are high crimes, subject to severe punishment.

The statute of the 6th August last (Acts 1861, c. 64; 12 Stat. 326) prescribes a new oath of allegiance, and fidelity to be taken by every officer, clerk, or employé in the several departments, or in any way connected therewith. It is in the following form: "I do solemnly swear (or affirm, as the case may be) that I will support, protect, and defend the constitution and government of the United States against all enemies, whether domestic or foreign, and that I will bear true faith, allegiance, and loyalty to the same, any ordinance, resolution, or law of any state convention or legislature to the contrary notwithstanding; and further, that I do this with a full determination, pledge, and purpose, without any mental reservation, or evasion whatsoever; and further, that I will well and faithfully perform all the duties which may be required of me by law. So help me God." The violation of this oath is denounced and punished as wilful and corrupt perjury. What shall be deemed a violation, is not defined, but the very general and comprehensive language is left to judicial interpretation. This oath is wisely framed for the purpose of upholding the paramount authority of the national government, and recognizes allegiance to the United States as the highest political duty. It emphatically repels the deadly heresy of a paramount state allegiance.

Official oaths have heretofore generally been left without penal sanctions, their observance being secured only by the conscience of the officer; but we are admonished by recent atrocious examples, that the moral sense is no adequate security against the most appalling perfidy in officers of every grade, and it is wise therefore to affix to such crimes the palpable temporal penalties of perjury.

These two acts passed by the national legislature, at their recent session, to uphold the constitution and the government, are highly important. Looking at the powers and duties of congress by the light of the conflagration which has threatened to desolate our country, we see that such enactments ought to have existed from the beginning. If they had, and had been faithfully executed for the last twenty years, the catastrophe in which we are now involved would probably have been prevented.

## Case No. 18,278.

The CITY of WASHINGTON.

[Cited in Bartlett v. Spicer, 75 N. Y. 530. Nowhere reported. Opinion not now accessible.]

CIVIL CASES, FEES AND COSTS IN CIVIL CASES. See Case No. 18,284.

CIVIL RIGHTS ACT. Charge to Grand Jury in relation to the CIVIL RIGHTS ACT. See Cases Nos. 18,258, 18,259 and 18,260.

## Case No. 18,279.

CLARKE et al. v. CLARKE et al.

[2 Hayw. & H. 114.] [1]

Circuit Court, District of Columbia. May 30, 1853.

ASSIGNMENT TO ATTORNEYS OF INTEREST IN CLAIM —LIEN OF.

1. Where a claim was presented and prosecuted by attorneys in the name of a bankrupt who had purchased it at a sale made by his assignee in bankruptcy, but which sale was subsequently declared void. An assignment in a power of attorney of so much of the fund as the attorneys were to receive as compensation for their services will be carried out.

2. Such an assignment is a lien on the fund, and will be preferred to the judgment creditors of the bankrupt.

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]